[No. 2162–3. Division Three. October 11, 1977.]

ARTEMIO MESA, *Appellant,* v. SPOKANE WORLD
EXPOSITION, ET AL, *Respondents.*

---

*Hamblen, Gilbert & Brooke, P.S.,* and *D. E. McKelvey, Jr.,* for appellant.

*Richter, Wimberley & Ericson, John T. Krall, Mac-Gillivray, Jones, Clarke, Schiffner & Johnson, Richard E. Hayes, Huppin, Ewing, Anderson & Hergert, P.S.,* and *C. E. Huppin,* for respondents.

MUNSON, C.J.—Artemio Mesa appeals a summary judgment dismissing his complaint for damages arising from a personal injury.

Viewing the evidence and all reasonable inferences therefrom in a light most favorable to Mesa, the depositions and affidavits before the court support the following factual statement:

On Sunday, March 17, 1974, in response to a general public invitation to visit the grounds and pavilions of Expo '74 before they were fenced in preparation for the exposition's opening, Mesa and three companions traveled to the site. They entered the grounds through the breezeway between the Opera House and the Washington State Pavilion (Center). After touring the site for approximately 1 hour, they decided to leave; however, they were attracted to the Center by a line of visitors entering it through the west–end doors. After entering the Center with other visitors, they proceeded to the eastern portion of it. Evidence of construction in progress was obvious. Mesa and his companions discovered an unlighted stairway and ventured up it. Just after stepping off the stairway's third landing, plaintiff fell through an unbarricaded ventilator shaft. The place where the accident occurred was dark; a barricade had been removed on the preceding Friday.

Unlike most of the other pavilions, the Center was not owned or controlled by Spokane World Exposition (Expo). The western portion of the Center was under the sole control of defendant Max J. Kuney Corporation (Kuney), and the eastern portion of the Center was under the sole control of defendant H. Halvorson, Inc. (Halvorson). The west–end doors to the Center were locked at the close of work on Friday, March 15. The place where the injury occurred was in the Halvorson portion of the Center and far removed from the breezeway. No one from Kuney or Expo was informed that a barrier around the shaft had been removed by employees of Halvorson. No personnel of Halvorson, Kuney or Expo were on the premises at the time of the fall.

At no time while touring the Center did Mesa or his companions observe any warning signs, no–trespassing signs, danger signs, ropes or barriers, no–admittance signs, guards, employees of Expo, hazard lights or other evidence

that the Center was not to be visited within the scope of Expo's invitation.

Defendants denied any negligence and moved for summary judgment. The court granted defendants' motions concluding:

(A) *With regard to Halvorson:* (1) Mesa was a trespasser, (2) Halvorson's only duty was not to willfully or wantonly injure Mesa, (3) Mesa's injury was not the result of a willful or wanton act, *i.e.,* the shaft was located atop three flights of stairs, was part of the total construction process, was not designed or intended to cause injury, and was discoverable as a dangerous condition by anyone exercising reasonable care for his own safety.

(B) *With regard to Kuney:* (1) It was not the possessor of the area where the accident occurred, (2) it did not invite Mesa into its portion of the Center, (3) it had locked the west–end doors upon completion of work on Friday, March 15, (4) Mesa was a trespasser in the area under Kuney's control, (5) no willful or wanton act occurred in Kuney's area which resulted in Mesa's injury, (6) even if Mesa was an invitee or licensee, there was no factual basis to conclude that Kuney knew of the condition of the Halvorson portion of the Center, or that Kuney had any duty to warn Mesa about any unknown hazard.

(C) *With regard to Expo:* (1) Although it issued the general invitation to the public to tour the grounds and pavilions, it had no authority to invite the public to enter the Center, (2) while the breezeway was used for the purpose of ingress or egress to the site, Expo had no duty to warn Mesa of conditions on adjacent premises unless the premises contained a hidden hazard which could result in foreseeable injury, and (3) while an open shaft at the top of three flights of stairs in the dark may be a hidden hazard, it was far removed from the breezeway.

The sole question is whether there exists a genuine issue of material fact as to Mesa's status and thus the corresponding duties of care owed him by the various defendants. We find there is.

■ Mesa was a public invitee of Expo. Restatement (Second) of Torts § 332 (1965); *McKinnon v. Washington Fed. Sav. & Loan Ass'n,* 68 Wn.2d 644, 414 P.2d 773 (1966). As such, he was led to believe that the pavilions and grounds were intended to be visited by himself and that reasonable care had been taken to make the pavilions and grounds safe for visitors. *McKinnon v. Washington Fed. Sav. & Loan Ass'n, supra* at 649. If a general and ambiguous express invitation is sought to be limited to a particular portion of a premises, the invitor must make the limitation apparent to the invitee either expressly or by obstructing or otherwise segregating the limited portion. *Goyette v. Sousa,* 90 R.I. 8, 153 A.2d 509 (1959).

■ While the invitor is generally liable only for injury to an invitee sustained while he is on the land within (1) the invitor's control, and (2) the scope of his invitation, the question of control (*cf. Skelly v. Pleasure Beach Park Corp.,* 115 Conn. 92, 160 A. 309 (1932), *e.g., Johnston v. De la Guerra Properties, Inc.,* 28 Cal. 2d 394, 170 P.2d 5 (1946)), and the scope of the invitation (*Montgomery Ward & Co. v. Steele,* 352 F.2d 822 (8th Cir. 1965), *Dowd v. Portsmouth Hosp.,* 105 N.H. 53, 193 A.2d 788, 95 A.L.R.2d 986 (1963)) are factual matters. 2 F. Harper & F. James, *The Law of Torts* § 27.12, at 1487 (1956); Restatement (Second) of Torts § 332, comment 1 (1965). *Cf.* Annot., 95 A.L.R.2d 992; *O'Keefe v. South End Rowing Club,* 64 Cal. 2d 729, 414 P.2d 830, 51 Cal. Rptr. 534, 16 A.L.R.3d 1, *see* Annot. at 25 (1966).

With regard to Expo, the jury could find that (1) it extended a general invitation to the public, (2) because of the ownership status of the various pavilions, the scope of the invitation was latently 'ambiguous, and (3) it negligently failed to limit the express invitation. Additionally, the jury could find that Expo assumed, as far as the public was concerned, the appearance of control over the Center and thereby brought Mesa as a recipient of the general invitation within the sphere of danger. The fact that others had control of the premises and did not make them safe for

614

the public or that Expo did not know of the unbarricaded ventilator shaft would not preclude Expo's liability.

With regard to Kuney, the jury could find that (1) Kuney knew or should have known of Expo's general invitation to the public; (2) Kuney knew or should have known of its overbreadth; and (3) Kuney breached its duty to make the premises secure or to post signs so that visitors would know that the Center was not within the scope of Expo's invitation.

With regard to Halvorson, the jury could find that (1) it knew or should have known of Expo's general invitation; (2) it did or should have known of its overbreadth; and (3) it breached its duty to (a) make the premises secure or to post signs so that visitors would know that the Center was not within the scope of the invitation, or (b) to barricade the ventilator shaft's opening or warn of its presence.

Consequently, the order granting summary judgment is reversed and the case is remanded for further proceedings.

GREEN and McINTURFF, JJ., concur.

Reconsideration denied November 8, 1977.

Review denied by Supreme Court May 12, 1978.