647 So.2d 1028 (1994)
CARETTA TRUCKING, INC., Appellant,
v.
CHEOY LEE SHIPYARDS, LIMITED, U.S. Paint Corporation, and Tom Fexas Yacht Design Corporation, Appellees.
No. 93-1267.
District Court of Appeal of Florida, Fourth District.
December 21, 1994.
*1029 Barry R. Cohen and Leo J. Spivack of Kleinfeld & Spivack, Miami, for appellant.
Anthony J. Carriuolo and Alan D. Danz of Fine Jacobson Schwartz Nash & Block, Fort Lauderdale, for appellee U.S. Paint Corp.
Joseph L. Mannikko of Frasier & Mannikko, Stuart, for appellee Tom Fexas Yacht Design, Inc.
ALVAREZ, RONALD V., Associate Judge.
Appellant Caretta Trucking, Inc. (Caretta), the plaintiff below, brings this appeal from an order that dismissed with prejudice Count III, breach of a third party beneficiary contract, of its amended complaint against defendant U.S. Paint Corp. (U.S. Paint), and entered final judgment in favor of that defendant.

STATEMENT OF FACTS AND CASE
Caretta contracted with Colonial Yacht Sales, Inc., (Colonial) to purchase a yacht. An order for the yacht was then placed by Colonial with Cheoy Lee Shipyards, Ltd., (Cheoy Lee), who manufactured the yacht according to the design, plans and specifications drafted by Fexas, the architect. According *1030 to the specifications for this particular model, the exterior of the yacht was to be painted by Cheoy Lee with "Awlgrip # 6001, Off White," which was a paint product manufactured by U.S. Paint. As set forth in Caretta's amended complaint, no patent defects were visible when the yacht was delivered. However, as time and experience with the vessel were gained, numerous defects became apparent to Caretta. Among those defects was the "Awlgrip # 6001, Off White," paint with which the yacht had been painted. When Caretta informed the soon-to-be defendants of the alleged defects, each defendant asserted that the other defendants were responsible for the repairs. As a result of the position taken by the defendants, Caretta filed suit against Colonial, Cheoy Lee, Fexas and U.S. Paint seeking damages for the defects contained in the yacht purchased by Caretta.
Following the dismissal of its original complaint, Caretta filed an amended complaint which contains six counts. Only one of the counts is relevant to this appeal:
Count III, breach of a third party beneficiary contract, directed against Defendant U.S. Paint.
Count III alleges that U.S. Paint breached a third party beneficiary contract:
58. At some time prior to March 31, 1989, the exact time being unknown to Plaintiff herein [Caretta], Defendant U.S. Paint and Defendant Cheoy Lee entered into an agreement, whether written or oral being unknown to Plaintiff herein, whereby Defendant U.S. Paint agreed to sell for a valuable consideration to Defendant Cheoy Lee, and Defendant Cheoy Lee agreed to buy one of its paint products, to wit "Allgrip [sic] # 6001, Off White".
59. Defendant U.S. Paint knew, at all times pertinent hereto, that Defendant Cheoy Lee purchased its said product for the purpose of painting and/or finishing hulls and superstructures which it was constructing for its customers, including Plaintiff herein.
Based on these allegations, the amended complaint states that "[Caretta] became by operation of law a third party beneficiary of the contract between" Cheoy Lee and U.S. Paint. The complaint goes on to allege that U.S. Paint breached its obligation under its contract with Cheoy Lee, "and its obligation to Plaintiff as third party beneficiary thereof," by manufacturing the paint in a defective manner and then delivering a defective batch to Cheoy Lee for use on Careta's yacht. As a result of U.S. Paint's breach, Caretta claimed to have been damaged to the extent of the cost of repainting the yacht, and sought that amount as relief.
U.S. Paint responded by moving to dismiss Count III with prejudice. This defendant argued that this count contained the same allegations as Count III of the original complaint, which was previously dismissed for failing to state a cause of action. The trial court had previously ruled that as a matter of law, Caretta was not a third party beneficiary of the contract between Cheoy Lee and U.S. Paint. The trial court agreed that the allegations contained in Count III of the amended complaint remained unchanged from those contained in the original complaint. Consequently, the trial court granted U.S. Paint's motion to dismiss with prejudice. It is noted that the trial court stated in its order that "At best, [Caretta] was an incidental third party beneficiary of the alleged contractual relationship between [U.S. Paint and Cheoy Lee], and [Caretta] therefore fails to state a cause of action against [U.S. Paint]." Caretta contends that the trial court erred by dismissing Count III with prejudice because this count contains all of the elements required to state a cause of action for breach of a third party beneficiary contract. Finally, Caretta requests that this court reverse the trial court's order.

THE LAW
On a motion to dismiss, the trial court is required to treat the factual allegations of the complaint as true. Also, the trial court is constrained to consider the factual allegations of the complaint in the light most favorable to the nonmoving party. Warren v. Monahan Beaches Jewelry Ctr., 548 So.2d 870 (Fla. 1st DCA 1989).
A person who is not a party to a contract may not sue for breach of that contract *1031 where that person receives only an incidental or consequential benefit from the contract. Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985). The exception to this rule is where the entity that is not a party to the contract is an intended third party beneficiary of the contract. Jacobson v. Heritage Quality Constr. Co., 604 So.2d 17 (Fla. 4th DCA 1992), dismissed, 613 So.2d 5 (Fla. 1993). A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong. Aetna Casualty & Surety Co. v. Jelac Corp., 505 So.2d 37 (Fla. 4th DCA 1987); Warren; Security Mut. Casualty Ins. Co. v. Pacura, 402 So.2d 1266 (Fla. 3d DCA 1981).
Thus, in order to plead a cause of action for breach of a third party beneficiary contract, the following elements must be set forth:
(1) a contract between A and B;
(2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);
(3) breach of that contract by either A or B (or both); and
(4) damages to C resulting from the breach.
Additionally, in order to find the requisite intent, it must be shown that both contracting parties intended to benefit the third party. It is insufficient to show that only one party unilaterally intended to benefit the third party. See Clark and Co. v. Department of Ins., 436 So.2d 1013, 1016 (Fla. 1st DCA 1983). Based upon the foregoing, the initial issue presented is whether, taking the well-pleaded allegations as true and viewing them in the light most favorable to Caretta, the allegations of Count III sufficiently pleads all of these elements.

ANALYSIS
An examination of Count III reveals that elements (1), (3) and (4) are sufficiently alleged. However, element (2), i.e., an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party or a class of persons to which that party belongs, is absent.
At the outset, it is noted that Caretta did not attach the contract between Cheoy Lee and U.S. Paint to its amended complaint. Notwithstanding that failure, Caretta argues in its brief that paragraphs 58 and 59 establish the existence of a contract between Cheoy Lee and U.S. Paint, and that this contract "was expressly for the Plaintiff's [Caretta's] benefit and Plaintiff is clearly the beneficiary of the Cheoy Lee and U.S. Paint Contract." A close inspection of those paragraphs discloses no such averment. Paragraph 58 alleges that, at some time prior to Caretta purchasing the yacht, Cheoy Lee and U.S. Paint "entered into an agreement, whether written or oral being unknown to [Caretta]," whereby U.S. Paint agreed to sell Cheoy Lee "Awlgrip # 6001." Paragraph 59 states that U.S. Paint knew Cheoy Lee purchased its product for the purpose of painting vessels it was constructing for its customers, including Caretta. Contrary to Caretta's suggestion, there is nothing in the allegations of Count III which states that the alleged contract between Cheoy Lee and U.S. Paint was expressly intended for Caretta's primary and direct benefit. Viewing the allegations in a light most favorable to the nonmoving party, Caretta alleges that a contract was made between Cheoy Lee and U.S. Paint for the purchase and sale of the paint at issue, and that U.S. Paint knew its product would be used to finish hulls, such as the one on Caretta's yacht.
Caretta also points out that attached to the amended complaint was a copy of its contract with Colonial, which included the specifications to be used to manufacture the yacht. One of these specifications, Caretta notes, was that "Awlgrip # 6001" be used on the hull. Caretta points to the inclusion of this specification in its contract to illustrate that Cheoy Lee and U.S. Paint intended Caretta to benefit from their contract because U.S. Paint's product was planned for Caretta's yacht. However, this specification demonstrates only that Cheoy Lee intended to use *1032 some of the paint it purchased on Caretta's yacht. What this specification does not speak to, however, is U.S. Paint's intention at the time it contracted to sell paint to Cheoy Lee. For all that is known from the pleadings, U.S. Paint had no idea how its paint was to be used by Cheoy Lee. Simply put, this passing reference to specifications, without more, is insufficient to substitute for the required allegation, discussed above, that both Cheoy Lee and U.S. Paint expressly intended their contract benefit Caretta directly. See Clark and Co.
Finally, Caretta argues that its "precontract and post contract contacts" with U.S. Paint, "as well as the contract itself," establish that Caretta is a third party beneficiary of the contract between Cheoy Lee and U.S. Paint. As support for this contention, Caretta relies on Florida Power & Light Co. v. Mid-Valley, Inc., 763 F.2d 1316 (11th Cir.1985); Warren. Both of the cases cited by Caretta are distinguishable from the case that is before this court.
Mid-Valley, Inc., was brought to the attention of the Eleventh Circuit following the district court's granting of a summary judgment. There were undisputed facts demonstrating that the contracting parties, Mid-Valley and Florida Power & Light, knew and intended their contract benefit the third party, Brown & Root. Those undisputed facts included:
(1) pre-contract and post-contract dealings between FPL and Mid-Valley showed that all parties knew Brown & Root would be performing some of the work under the contract, and intended that to be the case; and
(2) Mid-Valley was a wholly owned subsidiary of Brown & Root.
By contrast, there are no allegations in this case that suggest that the pre-contract and post-contract dealings between Cheoy Lee and U.S. Paint reveal that those parties knew and intended Caretta to benefit from their contract.
Warren is similarly distinguishable from the case presented by Caretta. In Warren, the complaint alleged that pre-contract and post-contract dealings between the contracting parties, a jewelry store and the purchaser of the jewelry, provided the jewelry store with knowledge that the engagement ring was intended for the purchaser's fiancee. The fiancee returned to the jewelry store after receiving the ring to complain about a certain defect. Based on these allegations, which are not present here, the First District Court of Appeal held that the pre-contract and post-contract dealings between the parties were sufficient to establish the fiancee as an intended third party beneficiary.

DISMISSAL WITH PREJUDICE
The final issue raised by Caretta is whether the trial court abused its discretion when it dismissed the amended complaint with prejudice. In Jacobson, this court held it was error to dismiss Jacobson's first complaint with prejudice without granting leave to amend. Although the procedural situation presented in Caretta differs from that presented in Jacobson, there is nothing in the record to indicate that Caretta has abused its right to obtain further leave to amend. Because our courts favor decisions on the merits, we find that the trial court abused its discretion in dismissing Count III with prejudice.

CONCLUSION
Despite Caretta's repeated claims in its brief that the Cheoy Lee and U.S. Paint contract was expressly intended for its benefit, Caretta did not include this critical allegation in Count III. Indeed, there is nothing in Count III that states that the provisions of the contract or the parties themselves through pre-contract or post-contract dealings expressed an intention that Caretta directly and primarily benefit from the Cheoy Lee and U.S. Paint contract. For the reasons stated above, we affirm the trial court's order dismissing Count III. Based upon the trial court's abuse of discretion in dismissing Count III with prejudice, this matter is reversed and remanded with directions to the trial court to afford Caretta an opportunity to further amend Count III.
GLICKSTEIN and WARNER, JJ., concur.